# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| D'ALAN E. BAUGH, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. RDB-17-1735 |
| THE FEDERAL SAVINGS BANK, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Class Action Complaint in this case alleges that the Defendant, The Federal Savings Back ("Defendant" or "FSB"), violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), by entering into a kickback scheme whereby the Defendant received unearned fees from Genuine Title, LLC for referrals. Now pending is the Defendant's Motion to Dismiss (ECF No. 6). This Court reviewed the parties' submissions and conducted a motions hearing on January 16, 2018.[1] For the reasons stated below, the Defendant's Motion to Dismiss (ECF No. 6) is GRANTED.

## BACKGROUND

### I. *Fangman v. Genuine Title* (RDB-14-0081)

The alleged kickback scheme in this case involves Genuine Title, LLC ("Genuine Title"), which has an extensive history with this Court. In December 2013, Edward and Vickie Fangman (represented by the same counsel involved in this case) filed a complaint

---

[1] At the request of counsel, this Court conducted a *consolidated* motions hearing for five cases related to Genuine Title's alleged kickback scheme with various financial institutions. (*See* Background, *infra*.)

1

against Genuine Title involving essentially identical allegations in the Circuit Court of Baltimore County that was removed to this Court in January 2014. (*See Fangman v. Genuine Title, LLC*, Case No. RDB-14-0081 (D. Md.), at ECF No. 1 ("*Fangman*").) The Fangmans alleged that Genuine Title, in exchange for the referral of title services on their mortgage loan, paid cash kickbacks to loan brokers and provided "marketing materials for free or at a drastically-reduced rate (collectively 'Free Marketing Materials') for various loan officers who were part of the mortgage lending process." (*Fangman,* Compl. ¶¶ 19-23, ECF No. 2.)[2]

In 2014, Genuine Title went bankrupt, and Plaintiffs' counsel, Smith, Gildea, & Schmidt, began to obtain access from Genuine Title's Receiver to the company's documents and records, including its computer servers. (*Baugh*, Mem. 1-2, ECF No. 6-1.) In early 2015, Plaintiffs' counsel used these records to identify and notify affected borrowers and prospective plaintiffs. (*Id.*) By June 2015, Plaintiffs' counsel was "able to pull data . . . that appears to represent . . . buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information." (*Fangman*, ECF No. 150-2 at 7.)

On January 2, 2015, plaintiffs in *Fangman* filed a First Amended Complaint naming other financial institutions. (*See Fangman*, ECF No. 47.) That First Amended Complaint in *Fangman* alleged violations of RESPA, Maryland's state-law analog to RESPA, and the Maryland Consumer Protection Act. (*See id.*) The *Fangman* plaintiffs further alleged that Genuine Title and its affiliated marketing companies provided Free Marketing Materials

---

[2] Even prior to the *Fangman* suit, in December 2012, a putative class action alleging the same kickback scheme was filed against Genuine Title and a number of financial institutions. *Roach v. Wells Fargo Bank, N.A.*, Case No. WDQ-l2-03800 (D. Md.). The Plaintiffs in that case voluntarily dismissed their claims in April 2013. (*See* ECF Nos. 36, 37, 39.)

2

and/or "Referring Cash" payments without disclosure on HUD-1 settlement documents. (*Id.* ¶ 3.) Plaintiffs in *Fangman* filed a Second Amended Complaint on May 20, 2015, adding additional parties and clarifying some of their previous allegations. (*See Fangman*, ECF No. 138.)

In addressing motions to dismiss by other defendants in the *Fangman* case, this Court ruled that equitable tolling may be available under RESPA and that those plaintiffs' claims were not time-barred. *Fangman*, 2015 WL 8315704, at *7. In so holding, this Court applied the equitable tolling test from *Grant v. Shapiro*, 871 F.Supp.2d 462, 470, n.10 (D. Md. 1998) that provides, "a plaintiff must allege with specificity fraudulent concealment on the part of the defendants and the inability of the plaintiff, despite due diligence, to discover the fraud." *Fangman*, 2015 WL 8315704, at *7 (citing *Grant*, 871 F.Supp.2d at 470, n.10). This Court applied that test in the *Fangman* action in the context of Plaintiffs' counsel's significant investigatory efforts, which by June 2015 had successfully identified borrowers referred to Genuine Title between 2006 through 2013. (*See Fangman*, 2016 WL 6600509, at *2 (D. Md. Nov. 8, 2016).) Accordingly, this Court found in December 2015 that facts had been sufficiently concealed from the *Fangman* plaintiffs, who did not know about their claim until contacted by counsel. *Fangman*, 2015 WL 8315704, at *7. In terms of due diligence, this Court found:

> Plaintiffs' counsel has undergone a large-scale review of Defendant Genuine Title's computer system. It is only through this review, aided by early discovery and a proprietary software system, that potential plaintiffs have been identified. The Second Amended Complaint, filed by Plaintiffs' counsel, clearly states that "[a]ll Plaintiffs learned of the illegal kickbacks less than one year prior to filing of the [Second Amended] Complaint and could not have known about the Kickback Scheme until contacted by undersigned counsel." Second Am. Compl. at ¶ 94, ECF No. 138. In light of these unique

3

circumstances, Plaintiffs have demonstrated that equitable tolling is warranted in this case and that all Plaintiffs, with the exception of the Eagle National Plaintiffs, brought their claims within one year of the date they could have first known of their cause of action through due diligence.

*Fangman,* 2015 WL 8315704, at *7.

Following discovery concerning Genuine Title's business practices and relationship with other lenders, some defendants (e.g., Wells Fargo, JP Morgan Chase, and PNC) have struck class settlements which have been the subject of public filings and class notices. (*See, e.g., Fangman*, ECF No. 479, Final Approval Order regarding PNC settlement.)

## II. Enforcement Actions by the federal Consumer Financial Protection Bureau ("CFPB") and Maryland Attorney General

Meanwhile, the Consumer Financial Protection Bureau ("CFPB") and the Maryland Attorney General initiated an enforcement action in this Court on January 22, 2015 against Wells Fargo Bank, N.A. and JPMorgan Chase Bank, N.A. predicated on similar schemes involving Genuine Title. (*See CFPB v. Wells Fargo Bank, N.A.*, Case No. RDB-15-0179 (D. Md.) ("*Lender Enforcement Action*").) The pendency and ultimate settlement of the *Lender Enforcement Action* in January 2015 was widely publicized. Specifically, the CFPB issued a press release on January 22, 2015, and local and national news media, including *The Baltimore Sun*, CNN, and the *Wall Street Journal*, published stories about the case. (*See Dobbins, et al. v. Bank of America, N.A.,* RDB-17-540 (D. Md.), ECF Nos. 17-3, 17-4.)[3]

The CFPB and Attorney General also filed an enforcement action on April 29, 2015 directly against Genuine Title, its principals, and affiliates arising out of the same alleged

---

[3] At the consolidated hearing in this case, *see* Background, Section IV, *infra*, this Court and the parties discussed and directly referenced press releases and an exemplar list of news articles that were attached as exhibits to the motions to dismiss in *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.) and *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.).

scheme. (*See CFPB v. Genuine Title LLC*, Case No. RDB-15-1235 (D. Md.) ("*Genuine Title Enforcement Action*")). The CFPB issued a press release on April 29, 2015 in which the CFPB outlined the enforcement action against Genuine Title based on the same facts alleged by the *Fangman* plaintiffs. On May 1, 2015, the CFPB and Maryland Attorney General announced a settlement with Genuine Title, and this Court entered a Stipulated Final Judgment and Order approving the settlement. (*See Genuine Title Enforcement Action*, ECF No. 18.) As with the *Lender Enforcement Action*, the *Genuine Title Enforcement Action* settlement was also reported by various news media outlets and other publications in May 2015. (*See Dobbins,* ECF No. 17-4.) The settlement orders in these enforcement actions explicitly contemplate related litigation by affected consumers (*see, e.g., Genuine Title Enforcement Action*, Genuine Title Order 5, ECF No. 18), but neither the Consumer Financial Protection Bureau nor the Office of the Attorney General of Maryland required that any financial institutions issue formal notices to the public (*see Lender Enforcement Action*, JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11).

III. ***Baugh, et al. v. The Federal Savings Bank* (RDB-17-1735)**

Plaintiffs D'Alan E. Baugh and Penny Frazier closed their loans with FSB on or about March 29, 2013 and September 23, 2013. (*Baugh*, Compl. ¶¶ 70, 71, ECF No. 1.) The Complaint on behalf of these Plaintiffs was filed on June 23, 2017, over three years after Plaintiffs closed their loans. Plaintiffs seek to represent the following proposed class:

> All individuals in the United States who were borrowers on a federally related mortgage loan (as defined under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602) originated or brokered by The Federal Savings Bank for which Genuine Title provided a settlement service, as identified in Section 1100 on the HUD-1, between January 1, 2009, and December 31, 2014. Exempted from this class is any person who, during the period of January 1,

5

2009 through December 31, 2014, was an employee, officer, member and/o agent of The Federal Savings Bank, Genuine Title LLC, Competitive Advantage Media Group LLC, Brandon Glickstein, Inc., and/or Dog Days Marketing, LLC.

(*Id.* ¶ 83.) The Complaint alleges that Genuine Title paid kickbacks in the form of referring cash, free marketing materials, and marketing credits. (*Id.* ¶¶ 17-42.) The free marketing materials were paid by Genuine Title and/or by Competitive Advantage Media Group, LLC ("CAM"). (*Id.* ¶ 27.) The Complaint further alleges that from 2012 to 2014, FSB referred approximately 1,000 loans to Genuine Title, and in return, FSB received kickbacks from Genuine Title and/or CAM in exchange for the referrals. (*Id.* ¶ 44.)

Specifically, both Plaintiffs obtained residential mortgages from FSB's Columbia Branch managed by Referring Broker Chris Infantino. (*Id.* ¶¶ 63, 65.) FSB in turn referred both Plaintiffs to Genuine Title for title and settlement services. (*Id.* ¶¶ 64, 66.) The referrals were made pursuant to a referring agreement between FSB and Genuine Title, whereby FSB received the above described kickbacks. (*Id.* ¶¶ 46-47.)

FSB moved for dismissal and/or summary judgment. (ECF No. 6.) At the hearing on January 16, 2018, all parties agreed to focus the analysis upon the motion to dismiss standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IV. Consolidated Hearing on Motions to Dismiss**

Plaintiffs' counsel, who has been in possession of Genuine Title's records since 2014 and who processed the data – including buyers' names – by June 2015, has filed the following seven class actions against other lenders who, like the defendants in *Fangman*, allegedly engaged in kickback schemes with Genuine Title.

1. *Edmondson v. Eagle National Bank*, *et al.,* Civil Case No. RDB-16-3938 (D. Md.)

2. *Dobbins, et al. v. Bank of America, N.A.,* Civil Case No. RDB-17-540 (D. Md.)
3. *Callum v. Priority Financial Services*, Civil Case No. RDB-17-0623 (D. Md.)
4. *James v. Acre Mortgage & Financial*, Civil Case No. RDB-17-1734 (D. Md.)
5. *Baugh, et al. v. The Federal Savings Bank*, Civil Case No. RDB-17-1735 (D. Md.)
6. *Ryman v. First Mortgage Corporation*, Civil Case No. RDB-17-1757 (D. Md.)
7. *Bezek, et al. v. First Mariner Bank*, Civil Case No. RDB-17-2902 (D. Md.)

On October 31, 2017, Miles & Stockbridge, defense counsel in both *Edmondson* (RDB-16-3938) and *Bezek* (RDB-17-2902), requested a consolidated hearing on ripe motions to dismiss. (*Edmondson*, ECF No. 20.) Plaintiffs' counsel, Smith, Gildea & Schmidt, agreed to a consolidated hearing for the ripe motions to dismiss in five of the seven cases – namely, *Edmondson* (RDB-16-3938); *Dobbins* (RDB-17-540); *James* (RDB-17-1734); *Baugh* (RDB-17-1735); and *Bezek* (RDB-17-2902). (*Edmondson*, ECF No. 21.)[4] Generally, the motions to dismiss in these five cases present statute of limitations and equitable tolling issues. This Court conducted the requested consolidated hearing on January 16, 2018.

## STANDARD OF REVIEW

### I. Rule 8(a)(2) and Rule 12(b)(6) Generally

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,

---

[4] Plaintiffs' counsel requested that *Callum* (RDB-17-0623) and *Ryman* (RDB-17-1757) be addressed separately. (*Edmondson,* ECF No. 21.) *Callum* is currently stayed pending settlement-related discovery. (*See Callum*, ECF No. 10.) *Ryman* "involves complex successor liability and jurisdictional issues not present in most of the other cases." (*Edmondson,* ECF No. 21.)

1949 (2009) (internal quotations and citation omitted). "A formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Similarly, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The consideration of materials through judicial notice does not transform a motion to dismiss into one for summary judgment. *See Tellabs,* 551 U.S. at 322; *Witthohn v. Fed. Ins. Co.,* 164 Fed. Appx. 395, 397 (4th Cir. 2006).

## II. Statute of Limitations & Equitable Tolling

A 12(b)(6) motion is an appropriate vehicle through which the Court may evaluate the affirmative defense of the statute of limitations "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Even if a statute of limitations defense appears to have merit based upon the face of the complaint, a Court may exercise its equitable authority to toll the statute of limitations.[5] *Fangman*, 2015 WL 8315704, at *7 (citing *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1630 (2015); *Grant v. Shapiro & Burson, LLP, et al.*, 871 F. Supp. 2d 462, 470 n.10 (D. Md. 2012)). In *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750 (2016), a *unanimous* United States Supreme Court held that equitable tolling requires the plaintiff to establish two

---

[5] As this Court confirmed in *Fangman*, equitable tolling applies to RESPA claims. *Fangman,* No. CV RDB-14-0081, 2015 WL 8315704, at *7 (citing *Kwai Fun Wong*, 135 S. Ct. at 1630; *Grant.*, 871 F. Supp. 2d at 470 n.10 (D. Md. 2012)).

elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 136 S. Ct. at 755 (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010). The Supreme Court emphasized these two requirements as "elements, not merely factors of indeterminate or commensurable weight." 136 S. Ct. at 756 (internal quotation marks omitted) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). While Plaintiffs argue that *Menominee's* test does not control this action because it is limited to the habeas context, the Supreme Court in *Menominee* applied the test to a contracts case, and the decision admits of no exceptions to the test's applicability. Furthermore, the Fourth Circuit applied the *Menominee* test to a tax appeal claim in *Cunningham v. Commissioner of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (unpublished). Other circuits have applied the *Menominee* test in numerous other contexts as well. *E.g., Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 907-10 (7th Cir. 2016) (Sherman Act claim); *Villarreal v. R.J. Reynolds Tobacco Co., Pinstripe, Inc.*, 839 F.3d 958, 970-73 (11th Cir. 2016) (age discrimination claim).[6]

The Supreme Court has held that "the diligence prong . . . covers those affairs within the litigant's control." 136 S. Ct. at 756. This element requires "reasonable diligence," not "maximum feasible diligence." *Holland*, 560 U.S. at 653. The second element "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee,* 136 S. Ct. at 756. In other words, the circumstances must combine to render "critical information . . . undiscoverable." *Gould v. U.S. H.H.S*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc). Courts have consistently held that fraudulent concealment by the

---

[6] In applying this test to the facts of the *Menominee* case, the Supreme Court found "no extraordinary circumstances" and therefore it had no need to "decide whether the Tribe was diligently pursuing its rights." 136 S. Ct. at 757, n.5.

9

defendant is a circumstance that may justify equitable tolling. *E.g., Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,* 7l F.3d 119, 122 (4th Cir. 1995); *Grant*, 871 F.Supp.2d at 470, n.10.

The United States Court of Appeals for the Fourth Circuit has emphasized that "equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Cunningham v. Comm'r of Internal Revenue*, No. 17-1433, 2018 WL 460854, at *2 (4th Cir. Jan. 18, 2018) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (internal quotation marks omitted). Federal courts employ equitable tolling "sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), as it is "a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007).

## **DISCUSSION**

Plaintiffs concede that RESPA's one-year statute of limitations would bar this lawsuit, which was filed over three years after the Plaintiffs closed their loans and two years after Plaintiffs' counsel processed Genuine Title's data. However, the parties dispute whether equitable tolling saves Plaintiffs' claim.

**I. Materials Considered**

As an initial matter, the Defendant asks this Court to consider materials that are not integral to the Complaint (e.g., court filings in the *Fangman* suit and the CFPB and Maryland Attorney General enforcement actions). The Plaintiffs acknowledge that such materials "fall within the narrow 'judicial notice' exception to Fed. R. Civ. P. 12(d) under which a court

10

may consider court records, including those of state courts, without converting a Rule 12(b)(6) motion to dismiss to one for summary judgment." (Mem. Opp'n 13, n. 12, ECF No. 9-1 (citing *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Witthohn v. Fed. Ins. Co.,* 164 Fed. Appx. 395, 397 (4th Cir. 2006)).) Plaintiffs also attack the Defendant's press release and news article exhibits under the summary judgment standard as inadmissible hearsay. (*Id.* 23.)

In considering a motion under Rule 12(b)(6), a district court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). This Court may take judicial notice of "docket entries, pleadings and papers in other cases," *Brown v. Ocwen Loan Servicing, LLC*, PJM–14–3454, 2015 WL 5008763, *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. May 6, 2016), as well as "newspaper articles, analysts' reports, and press releases," *In re Human Genome Sciences Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013); *accord Sha v. GenVec Inc.*, No. DKC-12-00341, 2013 WL 5348133, *1 n.2 (D. Md. Sept. 20, 2013). The rule against hearsay does not bar materials offered to establish the date of public notice rather than the truth of the matter asserted. *See In re Human Genome*, 933 F. Supp. 2d at 758.

This Court finds that the court filings and news articles offered by the Defendant will help resolve the question of equitable tolling by indicating the dates of public notice. The consideration of these materials does not transform this Motion to Dismiss into one for summary judgment. *See Tellabs,* 551 U.S. at 322; *Philips*, 572 F.3d at 180.

11

## II. Equitable Tolling

### A. Due Diligence

The parties have devoted considerable argument to disputing the content of the due diligence requirement in the wake of *Menominee*, 136 S. Ct. 750. The Defendant has argued that *Menominee* raised the bar to require affirmative acts of diligence even if the Plaintiffs had no inquiry notice of the need to pursue their rights in the first place. In response, the Plaintiffs note language in the Fourth Circuit opinion in *Supermarket of Marlinton* permitting a plaintiff to satisfy that diligence requirement by establishing that she "was not (and should not have been) aware of facts that should have excited further inquiry." 71 F.3d at 128. At the consolidated hearing, the Defendant argued that inquiry notice is inapplicable to RESPA, which provides for a limitations period beginning on the date of the occurrence of the violation. *See Mullinax v. Radian Guar., Inc.,* 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002); *Cunningham v. M&T Bank Corp.,* 814 F.3d 156 (3d Cir. 2016).[7]

The parties also dispute whether the efforts and knowledge of Plaintiffs' counsel may stand in for the Plaintiffs' own diligence to fulfill whatever level of diligence is required after *Menominee*. Plaintiffs assert that they cannot be charged with the knowledge of their own attorneys from before the attorney-client relationship was established. (Mem. Opp'n 19, ECF No. 17-1 (citing *Schwab v. Philip Morris USA, Inc.,* 449 F. Supp. 2d 992 (E.D.N.Y. 2006)).) Defendant emphasizes the role of Plaintiffs' counsel in filing the first complaint against Genuine Title in 2013, and later taking possession of Genuine Title's records in late 2014. (Mem. 10, ECF No. 6-1.) If judged by Plaintiffs' own conduct, the Defendant asserts

---

[7] Plaintiffs concede, "The discovery rule has no application to RESPA's statute of limitations or equitable tolling," (Mem. Opp'n 15, ECF No. 9-1), but it is not clear whether by making that assertion the Plaintiffs intend to also exclude inquiry notice from the due diligence analysis.

that "a reasonable person standing in Plaintiff's shoes would have heeded the 'storm warnings' via the governmental investigation and consent order, widespread media publicity, and public court records of the basis for these claims." (Mem. 14-15, ECF No. 6-1.) The Defendant asks this Court to follow *Cunningham v. M&T Bank Corporation,* 814 F.3d 156 (3d Cir. 2016), in rejecting the "lawyerly intervention" theory and in finding that Plaintiffs' participation in the loan transaction does not by itself fulfill due diligence.

Even if Plaintiffs can establish that they were "pursuing [their] rights diligently," *Menominee*, 136 S. Ct. at 755, with or without credit for their counsel's actions, this Court cannot ignore the role Plaintiffs' counsel has played in determining the timing of this action – and the other pending cases related to the Genuine Title kickback scheme. In June 2015, Plaintiffs' counsel had access to Genuine Title's "buyers' names, addresses, telephone numbers, property addresses, settlement dates, lender and in some cases mortgage broker information," (*Fangman*, ECF No. 150-2 at 7), information sufficient to uncover the scheme in this case. Even if Plaintiffs' counsel's knowledge is not relevant to the due diligence analysis, counsel's in-depth investigation into Genuine Title's records certainly bears heavily on the question of whether "extraordinary circumstances" stood in Plaintiffs' way and prevented timely filing. *Menominee*, 136 at 755.

### B. Extraordinary Circumstances

In an effort to establish the "extraordinary circumstances" element, the Plaintiffs assert that "affirmative misrepresentations on HUD-1s, in particular, constitute independent acts of concealment" (Mem. Opp'n 25, ECF No. 9-1 (citing *In re Community Bank of No. Va. Mortg. Lending Prac. Litig., PNC Bank N.A.*, 795 F.3d 380, 403 (3d Cir. 2015))), and that the

13

Defendant entered into "a sham Title Service Agreement to conceal" the kickback scheme (Mem. Opp'n 4 (citing Compl. ¶¶ 50-58)). At oral argument, Plaintiffs claimed that the Defendant's *ongoing* failure to disclose the true nature of its relationship with Genuine Title by sending notices to all customers known to have used Genuine Title's services constitutes an act of *continued* concealment by the Defendant. Under these circumstances, Plaintiffs contends that they have satisfied the extraordinary circumstances element because "they were not, and could not have been, aware of FSB's participation in the Kickback Scheme until contacted by counsel on or about May 3, 2017." (Mem. Opp'n 6 (citing Compl. ¶¶ 74, 86-87, 76-80, 86-87).)

Defendant argues that extraordinary circumstances are not present when the Complaint is "utterly devoid of factual allegations showing that they could not have discovered their claims more than one year prior to filing their Complaint." (Mem. 9, ECF No. 6-1.) In its Reply, Defendant further asserts that Plaintiffs' theory of equitable tolling "would completely write out the one year statute of limitations for RESPA violations and instead, allow a prospective plaintiff to sit on his or her rights while waiting for someone to inform them of their claim and right to file suit." (Reply 2, ECF No. 10-1.)

Even assuming *arguendo* that the initial HUD-1 non-disclosure and alleged "sham" agreements establish fraudulent concealment with sufficient particularity,[8] the circumstances causing Plaintiffs' delay were not "extraordinary" nor were they "beyond [their] control." *Menominee,* 136 S. Ct. at 756. Plaintiffs' counsel initiated suit against Genuine Title in December of 2013 alleging essentially the same kickback scheme. Regarding FSB and Chris

---

[8] This assumption is consistent with this Court's holding in *Fangman*, 2015 WL 8315704, at *7.

14

Infantino specifically, Plaintiffs' counsel received in February of 2016 the transcripts of the depositions of Brandon Glickstein and Jay Zuckerberg (*see* Mot. Ex. 5, ECF No. 6-1),[9] which admit to Chris Infantino and FSB's involvement in the alleged kickback scheme with Genuine Title (Compl. Ex. 5., J. Zukerberg 4/24/14 Dep., 133:4-9; 140:16-141:10, ECF No. 1-6; Compl. Ex. 3, B. Glickstein 9/15/2016 Dep., ECF No. 1-4). Accordingly, the Defendant's alleged continuing fraudulent concealment was simply not the only circumstance delaying the filing of this lawsuit.

In spite of this fact, Plaintiffs argue that this Court should focus on the Defendant's "ongoing" failure to broadly notify customers of a potential claim related to Genuine Title. Plaintiffs' view of equitable tolling essentially demands that this Court order Defendant FSB, and similarly situated lenders, to send out such notices to stop the ongoing equitable tolling of any RESPA claim by any Genuine Title customer. This theory swallows RESPA's one-year statute of limitations, which was set by Congress, and asks this Court to regulate lenders in a way that was specifically not requested by those federal and state enforcement agencies that have actively investigated Genuine Title and its associated financial institutions. (*See Lender Enforcement Action* (RDB-15-0179), JPMorgan Chase Order, ECF No. 10; *Lender Enforcement Action*, Wells Fargo Order, ECF No. 11.)[10]

Furthermore, the Defendant's alleged concealment effort did not "st[and] in [Plaintiffs'] way" up until the time they were contacted by counsel. *Menominee*, 136 S. Ct. at

---

[9] This Court takes judicial notice of the letter from the Maryland Insurance Administration for the purpose of establishing the date of receipt by counsel of the deposition transcripts. Federal Rule of Evidence 201 permits judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Plaintiffs do not dispute the accuracy of this official letter. *See United States v. Bello*, 194 F.3d 18, 24 (1st Cir. 1999) (approving judicial notice of "undisputed documentary evidence in the form of government maps, official letters, and public laws").

[10] Plaintiffs' counsel's oral argument to the contrary is belied by the plain text of the settlement orders.

755. In other words, it was *within the Plaintiffs' control* to discover a basis for their action in May 2015 at the latest,[11] roughly two years before being contacted by counsel in May of 2017. Unlike in the *Fangman* case, the Plaintiffs in this case could have discovered a substantial amount of public information on Genuine Title's illegal scheme that was brought to light through the *Fangman* and enforcement litigation. Although Plaintiffs argue that the public record does not specifically mention FSB or Plaintiffs' mortgage broker, Plaintiffs do not dispute that in 2013 they knowingly used Genuine Title for their title and settlement services. (*See* Compl. ¶¶ 64, 66, ECF No. 1.) Plaintiffs here allege that Genuine Title provided kickbacks to FSB in the form of form of referring cash, free marketing materials, and marketing credits (*id.* ¶¶ 17-42.), the same methods alleged in *Fangman* (*see Fangman*, Second Am. Compl. 9-12, ECF No. 138), the *Genuine Title Enforcement Action* (*see* RDB-15-1235, Compl. 9-10, ECF No. 1), and the *Lender Enforcement Action* (*see* RDB-15-0179, Compl. 3, 5, ECF No. 1). These three lawsuits produced public court records and publicly available news coverage on the same Genuine Title practices at issue in this case. (*See Dobbins*, ECF No. 17-4.)

Plaintiffs have made no allegation that the Defendant's actions or a lack of access to public records, news, the internet, TV, or a phone placed such information outside their reach.[12] They merely argue that they were not yet on "notice" of the need to search for such information. The issue of notice, however, is not relevant to the extraordinary circumstances

---

[11] This time period is when the *Genuine Title Enforcement Action* settlement was reported by various media outlets and publications. S*ee Dobbins,* ECF No. 17-4.
[12] Plaintiffs note that some of news sources offered by the Defendant are "not generally available" (Mem. Opp'n 12, ECF No. 9-1), but there is no allegation that Plaintiffs were unable to view a print copy, initiate a free trial, or purchase a subscription. Again, any subscription requirements did not place the news coverage outside Plaintiffs' control, and Plaintiffs do not allege any lack of access to the public court filings in the *Fangman* and enforcement actions.

analysis, which asks whether the circumstances combine to render "critical information, *reasonable investigation notwithstanding*, undiscoverable." *Gould*, 905 F.2d at 745–46 (emphasis added); *see also Supermarket of Marlinton*, 7l F.3d at 122 (requiring the plaintiff to show that it "failed to discover those facts within the statutory period, despite . . . the exercise of due diligence"). To consider notice or only that quantum of information discoverable by Plaintiffs' reasonable diligence would essentially ignore the Supreme Court's holding in *Menominee,* 136 S. Ct. at 756, that diligence and extraordinary circumstances are two distinct elements. The Fourth Circuit's use of "notwithstanding" in *Gould*, 905 F.2d at 745–46, and "despite" in *Supermarket of Marlinton*, 7l F.3d at 122, underscore that these elements must exist *simultaneously*, with the extraordinary circumstances placing the discovery of critical information entirely outside the Plaintiffs' control.

In *Fangman*, this Court found that the Defendants' concealment efforts contributed to "unique" circumstances warranting equitable tolling, *Fangman*, 2015 WL 8315704, at *7, but the Plaintiffs here also seek equitable tolling of a RESPA claim based upon Genuine Title's kickback practices. Plaintiffs' claim for equitable tolling is not "unique" let alone "extraordinary" when the underlying claims and concealment efforts are nearly identical and when the prior Genuine Title litigation and subsequent media coverage rendered critical information discoverable.

Plaintiffs have not demonstrated that their case presents one of "those rare instances where . . . it would be unconscionable to enforce the limitation period against [them] and gross injustice would result." *Cunningham*, 2018 WL 460854, at *2. Plaintiffs' counsel has already secured significant awards for their efforts to hold Genuine Title and other financial

17

institutions accountable for violating RESPA. (*See, e.g., Fangman*, Final Approval Order regarding Wells Fargo settlement, ECF No. 411.) Genuine Title went bankrupt, and Plaintiffs do not allege that the Defendant continues to receive illegal kickback payments through deceiving Plaintiffs or their fellow class members. Plaintiffs allege that between 2009 and 2014, they "were deprived of kickback-free settlement services and impartial and fair competition . . . [and] paid more for their settlement services because . . . kickbacks were paid instead of lower charges to the consumers." (Compl. ¶ 61-62, ECF No. 1.) While the purported class may have some interest in accountability and financial compensation, Congress firmly expressed an interest in providing certainty to the real estate market when it set the RESPA statute of limitations at one year.[13] Given this context, it would not be unconscionable or grossly unjust to enforce RESPA's one-year statute of limitations. To hold otherwise would "completely write out the one year statute of limitations for RESPA violations." (Reply 2, ECF No. 10.)

## **CONCLUSION**

For the reasons stated above, Defendant's Motion (ECF No. 6) is GRANTED.

A separate Order follows.

Dated: January 31, 2018 \_\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge

---

[13] Compare, for example, the State of Maryland's three-year statute of limitations for civil actions such as fraud or personal injury claims. Md. Code Ann., Cts. & Jud. Proc. § 5-101.